UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GRIMMWAY ENTERPRISES, INC. D/B/A GRIMMWAY FARMS, a California corporation and NATURIPE FARMS LLC f/k/a GLOBAL BERRY FARMS, LLC, a Delaware Limited Liability Company,**<br><br>         **Plaintiffs,**<br><br>    **v.**<br><br>**PIC FRESH GLOBAL, INC., a California corporation; and JEFFREY D. CASE, an individual,**<br><br>         **Defendants.** | **1:07-CV-00109 OWW-TAG**<br><br>**MEMORANDUM DECISION RE GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 36)** |

## 1.   INTRODUCTION

Plaintiffs Grimmway Enterprises, Inc. d/b/a Grimmway Farms ("Grimmway"), a California Corporation and Naturipe Farms LLC f/k/a Global Berry Farms, LLC, a Delaware Limited Liability Company ("Naturipe") move for partial summary judgment on their breach of fiduciary claim, pursuant to Federal Rules of Civil Procedure 56 against Pro Se Defendant Jeffrey D. Case ("Case"). Plaintiffs claim Defendant Case is personally liable for $16,336.00 (inclusive of attorney's fees and post-judgment interest).  Defendant Case did not appear for the hearing nor did Defendant file an opposition to this motion.  This matter was heard on January 14, 2008.

1

## **2.  PROCEDURAL BACKGROUND**

Plaintiffs Grimmway and Naturipe filed their complaint on January 19, 2007. (Doc. 1, Initial Complaint)  Plaintiffs then filed an amended complaint on January 29, 2007 and an accompanying application for injunctive relief to enforce Plaintiffs' rights under the trust provisions of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §499e ("PACA") against Defendants PIC Fresh Global, Inc. ("PIC Fresh") and Case. (Doc. 7, Amended Complaint ("Complaint"))  On January 29, 2007, the Court issued a temporary restraining order, which among other things, required PIC Fresh to discontinue any further dissipation of PACA trust assets and other assets which may or may not be impressed with the PACA trust, pending a hearing on Plaintiffs' motion for preliminary injunction and decision of the Court. (Doc. 17, Temporary Restraining Order)

A settlement agreement was entered into by the parties in February 2007 ("Settlement Agreement"); thereafter on February 12, 2007 a judgment was entered in favor of Plaintiffs and against Defendant PIC Fresh in the aggregate amount of $48,179.60, inclusive of interest and attorney's fees, as of the date of the Order and the case was dismissed. (Doc. 22, Judgment Order)  After Defendant PIC Fresh breached the Settlement Agreement the case was reopened against Defendant Case and a final judgment entered in favor of Plaintiffs and against PIC Fresh in the amount of $12,236.37 on August 15, 2007. (Doc. 27, Motion to Reopen Case and Final Judgment and Doc. 27, Final Judgment Order)

On September 10, 2007 Defendant Case filed an answer to

**2**

Plaintiffs' Complaint, admitting certain allegations in the Complaint but claiming no assets remained in the PACA trust and denying any personal liability. (Doc. 29, Answer)  Plaintiffs filed their motion for partial summary judgment on their breach of fiduciary duty claim against Defendant Case on November 30, 2007. (Doc. 36, Motion for Summary Judgment)  Defendant Case has not filed any responsive pleadings to Plaintiffs' Motion for Summary Judgment nor did Defendant Case appear at oral argument on January 14, 2008.  After this matter was heard, Plaintiffs' counsel, Lawrence H. Meuers filed a declaration on January 17, 2008 for the calculations of attorney's fees and post-judgment interest. (Doc. 42, Meuers Decl.)

**3.   FACTUAL BACKGROUND**

**A. <u>Statement of Facts</u>**

1. Plaintiffs Grimmway and Naturipe are engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce. (Doc. 35, PSUF No. 3) (Doc. 7, Complaint ¶ 2, Doc. 29, Answer ¶ 1)

2. PIC Fresh is a California Corporation with its principal place of business located at 7701 Palodura Ct., Bakersfield, California. (PSUF No. 4) (Doc. 7, Complaint ¶ 3(a), Doc. 29, Answer ¶ 1)

3. At all relevant times, PIC Fresh was a commission merchant dealer or broker operating subject to the provisions of PACA, 7 U.S.C. §§499a-499t. (PSUF No. 5) (Doc. 7, Complaint ¶ 72, Doc. 29, Answer ¶ 1)

4. Defendant Case was President and Principal of PIC Fresh.

**3**

(PSUF No. 18 and Exhibit B, Defendant PIC Fresh's license listing Defendant Case as the "Principal") (Doc. 7, Complaint, ¶¶ 3(b), 39, 40, Doc. 29, Answer, ¶¶ 1-4)

5. Plaintiffs sold Produce to PIC Fresh in interstate commerce, and PIC Fresh purchased Produce from Plaintiffs. (PSUF No. 6) (Doc. 7, Complaint ¶ 8, Doc. 29, Answer ¶ 1)

6. PIC Fresh failed to pay for its purchase of Produce from Plaintiffs. (PSUF No. 7) (Doc. 7, Complaint ¶ 12, Doc. 29, Answer ¶ 1)

7. On or about January 29, 2007, a Complaint and accompanying application for injunctive relief were filed by Plaintiffs Grimmway and Naturipe to enforce their rights under the trust provisions of PACA against Defendants PIC Fresh and Case. (PSUF No. 8) (Doc. 7, Complaint)

8. On January 29, 2007, the Court issued a TRO, which among other things, required PIC Fresh to discontinue any further dissipation of PACA trust assets, pending a hearing on Plaintiffs' motion for preliminary injunction and decision of the Court. (PSUF No. 9) (Doc. 17, Temporary Restraining Order)

9. In order to avoid the cost, expense and time involved in litigating the various claims asserted by Plaintiffs against Defendants, Plaintiffs entered into a Settlement Agreement to settle and compromise all claims asserted against PIC Fresh and Case. (PSUF No. 10 and Exhibit A, Settlement Agreement)

10. Pursuant to the Settlement Agreement, a Judgment was entered in favor of Plaintiffs and against PIC Fresh in the aggregate amount of $48,179.60, inclusive of interest and attorneys' fees as of the date of the $48,179.60 Judgment Order

**4**

("Settlement Amount"). (PSUF No. 11) (Doc. 22, Judgment Order)

11. Plaintiffs' claims against Defendant Case were dismissed without prejudice. (PSUF No. 12) (Doc. 22, Judgment Order)

12. Since execution of the Settlement Agreement, PIC Fresh has only paid $40,089.80 of the entire Settlement Amount, with a balance of $8,089.80. (PSUF No. 13) (Doc. 24, Affidavit, Steven M. De Falco, Attorney for Plaintiffs, and Doc. 27, Final Judgment Order)

13. Plaintiffs have received no further payments from PIC Fresh, and therefore according to the Settlement Agreement, PIC Fresh is in default. (PSUF No. 14) (Doc. 24, Affidavit, Steven M. De Falco, Attorney for Plaintiffs and Doc. 27, Final Judgment Order)

14. As a result of PIC Fresh's breach of the Settlement Agreement, the Court on August 15, 2007, entered a Final Judgment in favor of Plaintiffs Grimmway and Naturipe and against Defendant PIC Fresh in the total amount of $12,236.37, inclusive of attorney's fees and post-judgment interest. (PSUF No. 15) (Doc. 27, Final Judgment Order)

15. This Court reopened the case against Defendant Case on August 15, 2007. (PSUF No. 16) (Doc. 27, Final Judgment Order)

16. On September 10, 2007, Defendant Case filed an Answer to the Complaint. (PSUF No. 17) (Doc. 29, Answer)

17. Defendant Case controlled PIC Fresh's operations and financial dealings in connection with the PACA trust assets of PIC Fresh and admits the outstanding balance of $12,236.37, but denies any personal liability. (PSUF No. 19) (Doc. 7, Complaint ¶

**5**

42, Doc. 29, Answer, ¶¶ 1, 4)

18. Plaintiffs Accounts Receivable Supervisor for Credit and Collections at Grimmway, Pamela Terry, claims that she spoke on several occasions with Defendant Case to determine when Grimmway would receive payments from PIC Fresh on outstanding invoices. (Doc. 33, Pamela Terry Decl., ¶¶ 1, 9)

19.  On one occasion Ms. Terry states that she was informed by another individual at PIC Fresh that Defendant Case was the individual who decided when Grimmway would receive payment on outstanding balances. (PSUF No. 20) (Doc. 33, Pamela Terry Decl., ¶ 10).

## 4.  LEGAL STANDARDS

### A.    Standard of Review

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.*  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the

suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Id.*; *Anderson*, 477 U.S. at 255.

**B.   Plaintiffs' Motion for Summary Judgment against Defendant Case for Breach of Fiduciary Duty Claim**

Plaintiffs Grimmway and Naturipe bring this motion for partial summary judgment against Defendant Case, as President of PIC Fresh for breach of fiduciary duty, claiming Defendant Case is personally liable due to his control of the assets as trustee under the PACA trust for the $12,236.37 unpaid portion of their PACA trust claims, plus post-judgment interest and attorney's fees.

"When, as is the case here, the moving party is a plaintiff, he or she must adduce admissible evidence on all matters as to which he or she bears the burden of proof." *Zands v. Nelson*, 797

**7**

1  F.Supp. 805, 808 (S.D.Cal. 1992); Schwarzer, Tashima, &

2  Wagstaffe, Federal Civil Practice Before Trial 14:140 (2007).  As

3  a result, the Court will evaluate individual liability, for a

4  breach of fiduciary claim under a PACA trust as to Defendant Case

5  to determine whether there is genuine issue of material fact as

6  to any element of Plaintiffs' claim for relief.

7      In addition, it should be noted that Defendant Case filed no

8  opposition to Plaintiffs' Motion.  "If the opposing party does

9  not so respond, summary judgment should, *if appropriate*, be

10 entered against that party." Fed. R. Civ. P. 56(e)(2) (emphasis

11 added).  "The language of the rule [56(e)] is permissive,

12 conferring discretion upon the district judge to determine

13 whether non-compliance should be deemed consent to a given

14 motion.  That discretion, however, is necessarily abused when

15 exercised to grant a motion for summary judgment where the

16 movant's papers are insufficient to support that motion or on

17 their face reveal a genuine issue of material fact." *Henry v.*

18 *Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

19     Federal Rules of Civil Procedure Rule 56(c) requires that

20 the moving party to show there is no genuine issue as to any

21 material fact but also that the movant is entitled to judgment as

22 a matter of law:

23          The judgment sought should be rendered if the
            pleadings, the discovery and disclosure materials on
24          file, and any affidavits show that there is no genuine
            issue as to any material fact and that the movant is
25          entitled to judgment as a matter of law.

26 Fed.R.Civ.P. 56(c).

27 **C.    PACA**

28     PACA, 7 U.S.C. § 499a-499t, was enacted in 1930 with the

**8**

intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." *Farley and Calfee, Inc. v. U.S. Dept. of Agric.,* 941 F.2d 964, 966 (9th Cir. 1991). PACA regulates trading in agricultural commodities, *e.g.* fruits and vegetables. PACA requires all brokers and dealers in perishable agricultural commodities to obtain licenses from the Secretary of Agriculture. *Id.*; 7 U.S.C. §§ 499c, 499d. Dealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce. 7 U.S.C. § 499b(4).

"Such liability may be enforced either (1) by complaint to the Secretary ... or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b).

In 1984 PACA was amended to address the uncertain financial arrangements created by dealers receiving goods without payment. A statutory trust was provided by Congress under PACA on behalf of suppliers and sellers that were unpaid.

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

*Id.* at § 499e(c)(2); *see also* 7 C.F.R. § 46.46 (2007). "This

provision imposes a 'non-segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust." *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transportation Factoring, Inc.*, 251 F.3d 1268, 1270 (9th Cir. 2001).

The statute further provides that to preserve one's rights as a beneficiary of a PACA trust, notice must be given by the seller to the dealer and the Secretary of Agriculture within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction.  The regulations promulgated pursuant to this section provide that the maximum time parties may agree upon for payment is thirty days from the date of receipt and acceptance of the goods. 7 C.F.R. § 46.46(f)(1) & (2).

PACA trust rights may be enforced through the Secretary of Agriculture issuing an order (and subsequent judicial enforcement), 7 U.S.C. § 499f & g, or through judicial enforcement in federal court in a breach of fiduciary trust action, 7 U.S.C. § 499e(c)(5).  "The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5).

**D.   INDIVIDUAL LIABILITY UNDER PACA**

The Ninth Circuit along with several other circuits

**10**

1  recognize that individuals may be liable under a PACA trust

2  theory.  "[I]ndividual shareholders, officers, or directors of a

3  corporation who are in a position to control PACA trust assets,

4  and who breach their fiduciary duty to preserve those assets, may

5  be held personally liable under the Act." *Sunkist Growers, Inc.*

6  *v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).  "Anyone found to

7  be a PACA 'dealer' is subject to liability under PACA section

8  499b, which makes unlawful unfair conduct including the failure

9  to maintain a statutory trust....If deemed a PACA 'dealer,' an

10 individual is liable for his own acts, omissions, or failures

11 while acting for or employed by any other dealer." *Id.* (citations

12 and quotations omitted); *see also Hiller Cranberry Products, Inc.*

13 *v. Koplovsky*, 165 F.3d 1, 8-9 (1st Cir. 1999) ("An individual who

14 is in the position to control the trust assets and who does not

15 preserve them for the beneficiaries has breached a fiduciary

16 duty, and is personally liable for that tortious act."); *Golman-*

17 *Hayden Co., Inc. v. Fresh Source Produce Inc.,* 217 F.3d 348, 351

18 (5th Cir. 2000) ("We join our colleagues in the Ninth Circuit and

19 hold that individual shareholders, officers or directors of a

20 corporation who are in a position to control trust assets, and

21 who breach their fiduciary duty to preserve those assets, may be

22 held personally liable under PACA."); *Patterson Frozen Foods,*

23 *Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir.

24 2002); *Bronia, Inc. v. Ho*, 873 F.Supp. 854, 861 (S.D.N.Y. 1995)

25 (sole shareholder, director, and president of corporation

26 personally liable for corporation's breach of PACA trust under

27 *Morris Okun*).

28        Under California law, a trustee's duties include the duty of

**11**

loyalty, the duty to avoid conflicts of interest, *the duty to preserve trust property*, *the duty to make the trust property productive*, the duty to dispose of improper investments, and the duty to report and account. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 462, 80 Cal.Rptr.2d 329 (Cal.Ct.App. 1998) (emphasis added).  A trustee is bound to act in the highest good faith toward the beneficiaries and must not occupy a position where his or her interests either conflict with those of the beneficiaries or even where the trustee is exposed to the temptation of acting contrary to the best interest of the beneficiaries." *In re Brown's Estate*, 22 Cal.App.2d 480, 485, 71 P.2d 345 (Cal.Ct.App. 1937) Individual liability under PACA extends only to those "who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets." *Sunkist Growers, Inc.*, 104 F.3d at 283.

## 5. DISCUSSION

### A.   JURISDICTION

The District Court has jurisdiction over this civil action arising under §5(c)(5) of PACA, 7 U.S.C. §499e(c)(5), pursuant to 28 U.S.C. §1331.

### B.   INDIVIDUAL LIABILITY UNDER PACA

Plaintiffs bring this Motion for Summary Judgment against Defendant Case on their breach of fiduciary duty action claiming no genuine issue as to any material fact exists that Defendant Case was President and Principal of PIC Fresh and in this position controlled PIC Fresh operations and financial dealings, including distribution of PIC Fresh PACA trust assets and

therefore is personally liable. (Doc. 36, Motion for Summary Judgment, p. 2:2-10)  Defendant Case has filed no opposition to this Motion for Summary Judgment in defense of Plaintiffs' motion.

Individual liability under PACA extends to those "who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets." *Sunkist*, 104 F.3d at 283.

Defendant Case, representing himself pro se, admitted in his Answer to Plaintiffs' Complaint that (a) Plaintiffs Grimmway and Naturipe are engaged in the buying and selling wholesale quantities of Produce in interstate commerce. *See* Doc. 7, Complaint ¶ 2 and Doc. 29, Answer ¶ 1; (b) Defendant PIC Fresh is a California corporation, a commission merchant dealer or broker operating subject to PACA. *See* Doc. 7, Complaint ¶ 7 and Doc. 29, Answer ¶ 1; (c) Plaintiffs sold Produce between September 20, 2006 and December 13, 2006 to PIC Fresh and PIC Fresh purchased the Produce from Plaintiffs in interstate commerce Produce in the total amount of $42,179.60. *See* Doc. 7, Complaint ¶ 8 and Doc. 29, Answer ¶ 1; (d) Pursuant to PACA, 7 U.S.C. § 499e(c), at the time of PIC Fresh's receipt of the Produce, PIC Fresh became trustee of the PACA trust for the benefit of Plaintiffs in the amount of $42,179.60.  The PACA trust consists of all PIC Fresh's inventories of Produce, food or products derived from Produce ("Products"), accounts receivable and other proceeds of the sale of Produce or Products, and assets commingled or purchased or otherwise acquired with proceeds of such Produce or Products (assets subject to the PACA trust are hereinafter referred to as

**13**

"PACA Trust Assets"). *See* Doc. 7, Complaint ¶ 10 and Doc. 29,

Answer ¶ 1; (e) Plaintiffs gave written notice of intent to

preserve trust benefits to PIC Fresh in accordance with the PACA

Amendments of 1995 by including the statutory trust language, as

set forth in 7 U.S.C. §499e(c)(4), on each of their invoices and

by sending those invoices to PIC Fresh. *See* Doc. 7, Complaint ¶

11 and Doc. 29, Answer ¶ 1; (f) PIC Fresh failed to pay for the

Produce despite Plaintiffs' repeated demands. *See* Doc. 7,

Complaint ¶ 12 and Doc. 29, Answer ¶ 1; (g) Pursuant to PACA, 7

U.S.C. §499e(c), Plaintiffs are unpaid suppliers and sellers of

Produce, and are entitled to PACA trust protection and payment

from PIC Fresh's PACA Trust Assets. *See* Doc. 7, Complaint ¶ 13

and Doc. 29, Answer ¶ 1; (h) PACA requires PIC Fresh, as a PACA

trustee, to hold its PACA Trust Assets in trust for the benefit

of Plaintiffs and all other unpaid suppliers of Produce until all

such suppliers have received full payment; PIC Fresh has failed

to maintain sufficient trust assets to fully satisfy all

qualified PACA trust claims, including Plaintiffs' asserted

herein. *See* Doc. 7, Complaint ¶ 23-24 and Doc. 29, Answer ¶ 1;

(i) As a direct result of PIC Fresh's failure to properly

maintain and protect the PACA Trust Assets from dissipation,

Plaintiffs have suffered damages which are covered under the PACA

trust in the amount of $12,236.37 (inclusive of attorney's fee

and post-judgment interest through August 6, 2007), the balance

reduced by prior payments. *See* Doc. 7, Complaint ¶¶ 23-24 and

Doc. 29, Answer ¶ 1; (j) At all times relevant to this action,

Defendant Case was the principal, president, officer, director,

shareholder and employee of PIC Fresh. *See* Doc. 7, Complaint ¶¶

**14**

3(b), 39-40 and Doc. 29, Answer ¶¶ 1, 3; and (k) Defendant Case was the principal of PIC Fresh, and controlled its operations and financial dealings, but denies that his actions give rise to personal liabilities of the corporation and claims no assets in the PACA trust remain. *See* Doc. 29, Answer ¶¶ 1, 4.

However, despite Defendant Case's assertion that no PACA trust assets remain, Case can be held personally liable as a trustee for a PACA trust under a breach of fiduciary claim. *Sunkist Growers, Inc.*, 104 F.3d at 283.  Defendant Case admitted in his Answer that he is the President, Principal, officer, director and shareholder of PIC Fresh and in that capacity controlled or was in the position to control the assets of PIC Fresh, however he denied allegations in Plaintiffs' Complaint that he had a duty to ensure PIC Fresh fulfilled its duties as a PACA trustee and maintain PACA Trust Assets in such a manner as to ensure there were, at all times, sufficient trust assets available to satisfy all outstanding PACA trust obligations. *See* Doc. 7, Complaint, ¶¶ 40-42 and Doc. 29, Answer, ¶ 4.  Defendant Case also denied in his Answer that he breached his fiduciary duty and denies personally being liable to direct PIC Fresh to fulfill its duties as PACA trustee (to preserve and maintain sufficient PACA trust assets) which as a result of the breach, Plaintiffs incurred damages. *See* Doc. 7, Complaint, ¶¶ 44, 46 and Doc. 29, Answer, ¶ 4.  Defendant Case has not submitted evidence to support the denials in his Answer.

Plaintiffs submits in support of their breach of fiduciary claim, a declaration by Plaintiff Grimmway's Accounts Receivable Supervisor for Credit and Collections, Pamela Terry, who

**15**

personally attempted to collect Grimmway's unpaid invoices from
PIC Fresh. (Doc. 33, Pamela Terry Decl., ¶ 3)  She claims that
throughout Grimmway's relationship with PIC Fresh she spoke with
Defendant Case and Justin Case regarding PIC Fresh's business
operations. (Doc. 33, Pamela Terry Decl., ¶ 8)  In particular,
she spoke on several occasions with Defendant Case to determine
when Grimmway would receive payments from PIC Fresh on
outstanding invoices. (Doc. 33, Pamela Terry Decl., ¶¶ 1, 9)  On
one occasion Ms. Terry states that she was informed by PIC Fresh,
through Justin Case, that Defendant Case was the individual who
decided when Grimmway would receive payment on outstanding
balances. (PSUF No. 20) (Doc. 33, Pamela Terry Decl., ¶ 10)

        Whether Defendant Case is secondarily liable is dependent on
(1) whether his involvement with the corporation was sufficient
to establish legal responsibility, and (2) whether Defendant
Case, by failing to exercise any appreciable oversight of the
corporation's management, breached a fiduciary duty owed to PACA
creditors, Plaintiffs Grimmway and Naturipe. *Golman-Hayden Co.,*
*Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir.
2000).  In *Golman-Hayden Co.,* the court held "It is undisputed
that Tomaneng is the sole owner of Fresh Source. As the sole
shareholder, he manifestly had absolute control of the
corporation.  Although Tomaneng maintains that he was a passive
shareholder, he may not escape liability based on a real or
claimed failure to exercise his right and obligation to control
the company. We conclude that his refusal or failure to exercise
any appreciable oversight of the corporation's management was a
breach of his fiduciary duty to preserve the trust assets." 217

**16**

F.3d at 351.

Although Defendant Case cannot be held secondarily liable merely because he served as a corporate officer or shareholder, it has been established that Defendant Case's involvement with PIC Fresh was more than passive and he is legally responsible under PACA.  The PACA license lists Defendant Case as the reported principal of PIC Fresh. (Doc. 35, PSUF, Exhibit B, PACA license)  Defendant Case admits he is the Principal, President, director and shareholder of PIC Fresh.  Defendant Case admitted in his Answer that he controlled PIC Fresh's operations and financial dealings.  Ms. Terry of Grimmway stated in her declaration that she frequently spoke with Defendant Case regarding PIC Fresh's business operations and on several occassions to determine when payment would be made by PIC Fresh on outstanding invoices.  Ms. Terry was informed by PIC Fresh, through Justin Case, that Defendant Case was the person who decided if and when Grimmway would receive payment.

In *Shepard v. K.B. Fruit & Vegetable, Inc.,* 868 F.Supp. 703 (E.D.Pa. 1994), a Pennsylvania District Court case, individuals were held liable after the court found they demonstrated an "active involvement" in the operation of the business, including evidence that they established the corporation, exercised legal control as officers and directors, they were signatories on a banking agreement, applied for the businesses tax identification number, paid rent after the business ceased and stored some of its own produce at the business.  "The record demonstrates that the Kalecks were not merely uninvolved 'silent' corporate officers or shareholders, but rather established the business,

**17**

albeit for Blumberg's sake, used the premises and took action to continue the business after Blumberg abandoned it." *Id.* at 706. In *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346 (S.D.N.Y. 1993), the court determined thata sole shareholder of the corporation licensed to sell produce under PACA was secondarily liable to PACA trust creditors as a corporate fiduciary: "An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act." *Id.* at 348.

Plaintiffs bear the burden of proof to prove a breach of fiduciary duty claim and have submitted pleadings and affidavits to demonstrate there is no genuine issue as to any material fact as to Defendant Case's breach of fiduciary under the PACA trust. Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Defendant Case is personally liable for the outstanding amount due under the Settlement Agreement.  While Defendant Case filed no opposition to Plaintiffs' Motion for Summary Judgment and it is in the discretion of the District Judge to determine if summary judgment should entered in favor of Plaintiff due to the non-response of opposing party, Fed. R. Civ. P. 56(e), summary judgment is justified because Plaintiffs' evidence proves an implied PACA obligation and Defendant Case actively participated in PIC Fresh's operations.  He is personally liable. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

Defendants' motion for partial summary judgment against Defendant Case for breach of fiduciary duty is **GRANTED**.

**18**

**C. ATTORNEY'S FEES AND POST-JUDGMENT INTEREST**

**I. ATTORNEY'S FEES**

Plaintiffs are also seeking attorney's fees from Defendant Case.  *See* Doc. 34, Declaration of Plaintiffs' Attorney Steven M. De Falco.  Plaintiffs do not provide any briefing on this issue. The Ninth Circuit in *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220 (9th Cir. 2002) describes the awarding of attorney's fees in a PACA trust suit:

> First, turning to attorneys' fees, the district court has limited authority to grant attorneys' fees to PACA claimants. Unlike the British legal system rule, in which the winner automatically gets attorneys' fees, the rule in American courts, commonly known as the American Rule, looks with disdain upon awarding attorneys' fees unless an independent basis exists for the award. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (noting that exceptions to the "American Rule" that prevailing party is not entitled to attorneys' fees include (1) statutory basis, (2) enforceable contract, (3) willful violation of court order, (4) bad faith action, and (5) litigation creating common fund for the benefit of others). Under PACA, we have held that a court should award attorneys' fees to a PACA claimant whose litigation efforts "are directly responsible for the availability of the funds from the statutorily created trust." In re Milton Poulos, 947 F.2d at 1353 (parties deserved fee award because litigation efforts caused bankruptcy court to "declare[ ] the trust valid and enforceable."). In such cases, the "common fund" exception of Alyeska entitles the litigant to an attorneys' fees award out of the trust assets. Nonetheless, if the litigant is not responsible for the availability of the trust funds, the district court cannot award attorneys' fees to PACA claimants, unless the PACA claimant has another independent legal basis for attorneys' fees under an Alyeska exception. Alyeska, 421 U.S. at 259, 95 S.Ct. 1612; see, e.g., Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 352-353 (5th Cir.2000).

307 F.3d at 1225.

Here, the Settlement Agreement entered into by Plaintiffs and Defendants provides an independent contractual right to

1  attorney's fees. *See* Doc. 35, Statement of Undisputed Facts,

2  Exhibit A, Settlement Agreement, ¶ 19, <u>Rights of Prevailing</u>

3  <u>Party</u>.  In the provision of the Settlement Agreement entitled

4  <u>Rights of Prevailing Party</u> it states:

5
> If any lawsuit or other legal action is brought as
6
> between or among any of the Parties hereto relating to,
> arising out of, or to enforce, any of the provisions of
7
> this Agreement, the prevailing Party shall be entitled
> to collect its reasonable attorneys' fees and costs
> incurred in connection therewith.
8  *Id.*

9       While Plaintiffs may also be afforded attorney's fees based

10  on establishing a "common fund," *see In re Milton Poulos, Inc.*,

11  947 F.2d 1351, 1353 (9th Cir. 1991), this is unnecessary as an

12  explicit contractual basis exists.

13      Plaintiffs' counsel, Mr. Meuers, has personal knowledge of

14  the attorneys fees accrued and declares under penalty of perjury

15  that $5,192.00 has been billed on this matter. (Doc. 42, Meuers

16  Decl. ¶ 8)  The amount billed from August 15, 2007, the date of

17  entry of the Final Judgment, to the present is $2,904.00.[1]  This

18  amount is reasonable and necessary for Plaintiffs to obtain a

19  default judgment against the elusive Defendant in this matter.

20  Therefore, Plaintiffs shall recover $2,904.00 in attorney's fees

21  and costs.

22      **II. POST-JUDGMENT INTEREST**

23      Finally, Plaintiffs also seek post-judgment interest, (Doc.

24  42, Meuers Decl. ¶ 9), on the outstanding amount due under the

25  Settlement Agreement pursuant to paragraph 8 of the Settlement

26  _____

27       [1] The Final Judgment Order was inclusive of attorney's fees
    charged prior to entry of the Final Judgment, entered on August
28  15, 2007.  $2,904.00 is the amount earned after August 15, 2007.

**20**

Agreement which states:

> 8. <u>Remedies for Default</u>. In the event of a Default, Plaintiffs may request the Court to ... execute upon the Judgment against PIC Fresh in the amount of $48,179.60, plus interest accruing at the post-judgment rate from the date of entry of the Judgment, plus attorneys' fees incurred in enforcing the terms of this Agreement, less any payments made.

(Doc. 35, Statement of Undisputed Facts, Exhibit A, Settlement Agreement, ¶ 8)  Plaintiffs are entitled pursuant to statute to post-judgment interest which accrues on an unpaid federal judgment and is governed by federal law. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961.

A judgment was entered on February 12, 2007 for the amount of $48,179.60. (Doc. 22, Judgment)  And a final judgment was entered on August 15, 2007 for $12,236.37, after Defendants paid $40,089.80, leaving an unpaid balance due under the Settlement Agreement.[2]  The final judgment consists of that remaining balance along with attorney's fees and post-judgment interest through August 6, 2007. (Doc. 27, Final Judgment and Doc. 24, DeFalco Affid.)

The most recent calculations provided by Plaintiffs, after oral argument, in Exhibit A, to Meuers Decl., (See Doc. 42, Meuers Decl.), calculate post-judgment interest from February 2,

---

[2] Defendants paid Plaintiffs $32,000.00 on February 2, 2007 and $8,089.80 on February 28, 2007. *See* Doc. 42-3, Meuers Decl., Exhibit B, Trust Chart.

2007 not August 15, 2007, the date the final judgment was entered.   Post-judgment interest is calculated from August 15, 2007 at the rate of 4.78% on $12,236.37.[3]

Plaintiffs shall recover $310.88 in post-judgment interest.

## CONCLUSION

For the reasons set forth above, Plaintiffs motion for summary judgment against Defendant Jeffrey D. Case is **GRANTED**. Defendants shall recover $12,236.37, plus $2,904.00 in attorney's fees and $310.88 in post-judgment interest.

IT IS SO ORDERED.

**Dated:   February 25, 2008**               **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

---

[3] The Final Judgment Order of August 15, 2007 includes the amount outstanding under the Settlement Agreement plus attorney's fees and post-judgment interest through August 6, 2007.   The statutes states: "Such interest shall be calculated from the date of the entry of the judgment..." 28 U.S.C. § 1961.   On August 9, 2007 the post-judgment rate was 4.78%.   The post-judgment interest amount is calculated from August 15, 2007 through February 25, 2008.   "Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." 28 U.S.C. § 1961(b).